IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2002

## STATE OF TENNESSEE v. JAMES DALE WALKER

**Appeal from the Circuit Court for Blount County**
**No. C-12949-50     D. Kelly Thomas, Jr., Judge**

_____

**No. E2002-00263-CCA-R3-CD**
**October 18, 2002**
_____

The Defendant, James Dale Walker, pled guilty to aggravated sexual exploitation of a minor, a Class C felony, and sexual exploitation of a minor, a Class E felony. Pursuant to the plea agreement, the Defendant received concurrent sentences of six years and two years, respectively, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court denied alternative sentencing and ordered the Defendant to serve his effective sentence of six years in the Department of Correction. It is from this order that the Defendant now appeals as of right. We reverse the trial court's order that the Defendant serve his sentences in total confinement and remand to the trial court for consideration of some form of alternative sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Reversed; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

George Waters, District Public Defender, Maryville, Tennessee, and Steve McEwen, Mountain City, Tennessee, for the appellant, James Dale Walker.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Mike Flynn, District Attorney General; and John Bobo, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant, James Dale Walker, pled guilty to aggravated sexual exploitation of a minor, a Class C felony, and sexual exploitation of a minor, a Class E felony.[1] His plea agreement provided for concurrent sentences of six years and two years, respectively, as a Range I offender. The manner of service of the sentences was to be determined by the trial court. After conducting a sentencing hearing, the trial court denied any form of alternative sentence and ordered the Defendant to serve his sentences in the Department of Correction. The Defendant appeals as of right, arguing that the trial court erred by denying the Defendant an alternative sentence and ordering the Defendant to serve his sentences in confinement. We reverse the order of the trial court and remand for consideration of some form of alternative sentence.

The instant case stems from a nationwide law enforcement operation called "Operation Avalanche." An internet company based in Dallas, Texas, called "Landslide" had been providing access to internet websites containing child pornography. As a result of an investigation by postal inspectors and other law enforcement personnel in Dallas, the company was put out of business and taken over by law enforcement authorities as an undercover operation.

During the investigation of Landslide, law enforcement officers recovered a list of over one-hundred thousand names of customers across the country who had utilized Landslide to access child pornography websites. E-mails were sent to the twenty-five people in Tennessee who had accessed the child pornography sites most often. The Defendant was one of the twenty-five people on the list in Tennessee to whom an e-mail was sent. The e-mail stated that the Landslide company was back in business and offering the same services previously provided. The Defendant responded to the e-mail and was eventually given the opportunity to purchase child pornography videotapes. The Defendant requested a list of videos containing "pre-teen" pornography. A law enforcement officer sent the Defendant a list of available titles, including a graphic description of the sexual acts depicted in the videos and the ages of the actors. The Defendant ordered a videotape entitled "Teen Sex," which was described as depicting a nine-year old girl having sex with her father and his friend. The Defendant mailed a money order in the amount of $49.95 and requested that the video be sent to his post office box.

A controlled delivery was arranged by law enforcement personnel at the post office. The videotape that the Defendant ordered was put in an envelope and placed in his post office box. The Defendant retrieved the videotape from his box and entered his vehicle to leave the post office. The authorities then confronted the Defendant, identified themselves, and escorted him back inside the post office, where he was interviewed. The Defendant signed a waiver acknowledging that he

---

[1] We note that in the transcript of the guilty plea, counsel for the Defendant pointed out to the trial court that the Defendant's name is actually Jamey Dale Walker. However, we will address the Defendant by his name as it appears in the indictment, which is James Dale Walker.

understood his rights. He admitted that he had ordered the child pornography tape off the internet and that he had been struggling with child pornography for over a year.

The Defendant then consented to a search of his residence. The authorities followed the Defendant to his parents' house where he lived. He took them to his computer, where more child pornography was found. At that point, the Defendant described to the officers his problem with child pornography. One of the officers who accompanied the Defendant to his house testified at the sentencing hearing that the Defendant stated that his interest in child pornography began by looking at pictures of teenage girls. He then progressed to viewing pictures of girls in bathing suits. That led to looking for pictures of underage girls who were completely nude. Finally he went to sites containing hard-core child pornography. The Defendant would then "get disgusted with himself . . . and delete everything off his hard drive. And then, you know, start the cycle back over again." Apparently, this cycle had occurred several times. The Defendant told the officers that he had deleted all the pornography from his hard drive approximately one week before his arrest.

The presentence report reflects that, at the time of sentencing, the Defendant was twenty-eight years old and single. Although he dropped out of high school for health reasons, he obtained a GED and completed three quarters of study at "ITT Tech.," in Knoxville. According to the presentence report, the Defendant has no prior criminal history. Prior to his arrest, he had worked at Wal-Mart. However, he was suspended from his employment with Wal-Mart when he informed his supervisors of his arrest. He then worked for his parents, who own a garbage pickup service. Eventually, the Defendant began a new job with Hollywood Video. Charles VanAuken, the manger at Hollywood Video, wrote a letter to the trial judge, informing him that the Defendant had been forthright with the circumstances surrounding the instant proceedings. Mr. VanAuken stated that the Defendant told him that he had pled guilty to the charges of aggravated sexual exploitation of a minor and sexual exploitation of a minor and received a sentence of six years. In the letter, Mr. VanAuken praises the Defendant's work ethic, noting that he has been promoted twice and is currently the assistant manager of the store. He concludes by advising the court that if the Defendant were placed on probation, he could continue to work at Hollywood Video.

At the sentencing hearing, Ronnie Hepperly, the Defendant's pastor, testified that he had spoken to the Defendant regarding the conduct that led to the instant charges. Mr. Hepperly testified that before the Defendant was arrested, he came to the church seeking counseling and prayer. The Defendant acknowledged his problem with pornography, expressed his repentance, and stated his desire "to do better."

Dr. Michael Buckner also testified for the Defendant at the sentencing hearing. Dr. Buckner is a psychologist who has been counseling the Defendant at least bi-weekly since June 26, 2000. Dr. Buckner explained that the Defendant has an issue with child pornography. Through the course of the counseling, the doctor discovered that the Defendant had been raped by a family member when he was between the ages of seven and nine. Also, the Defendant had been harmed and probably molested by his scout master when he was ten or eleven years old. The doctor explained that, from a psychological perspective, these traumatic events in the Defendant's past explain his sexual desire

for children. Dr. Buckner called the Defendant's problem "a mental illness." However, when he was asked how the Defendant was progressing, Dr. Buckner replied, "I think he's progressed very well. I think he's to the point where he's not having desires to have any kind of under-aged sexual exposure." In a letter to the Board of Probation and Parole, Dr. Buckner wrote, "[I]t is my opinion, within a reasonable degree of psychological certainty, that Mr. Walker does not pose the likelihood of committing sexual assaults nor do I believe that he poses any risk to minors. Additionally, with continued therapy the likelihood of recidivism in Mr. Walker's case is minimum."

The Defendant also testified at the sentencing hearing. He explained how he would view child pornography on the internet and then feel guilty and delete the images from his hard drive. He said, "I started seeing that it was wrong and was trying to get away from it." When asked why he had decided to see a psychologist about his problem, he responded, "Because I realized that I had a problem that I was not able to help myself with. I had been trying to fix the problem myself by deleting the hard drive, and I realized that it was a problem I could not overcome myself, that I needed help." In the presentence report, in the section marked "Defendant's Version," is the following statement, made by the Defendant:

> I accept full responsibility for my actions. I am currently in treatment with Dr. Michael Buckner for this problem. Being a victim of child sexual abuse, I understand the severity of this offense and how my actions affect others. I apologize to my family and everyone involved for the pain that I have caused. By continuing my treatment and counseling[,] I know that I can be a productive member of this community.

At the conclusion of the sentencing hearing, the trial court ordered that the Defendant serve his effective six-year sentence in the Department of Correction. The judge based his decision on the Defendant's "history of criminal behavior greater than that that is necessary to establish the appropriate range" and "that [the offense] involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement." The court also considered mitigating factors such as the Defendant's cooperation and honesty with law enforcement officers, the steps the Defendant had taken towards rehabilitation, the Defendant's lack of a prior criminal record, and his steady employment history. However, the court found that the presumption that the Defendant was a favorable candidate for alternative sentencing had been rebutted by the length and degree of the Defendant's involvement with child pornography. The court also stated that it believed that confinement was necessary to avoid depreciating the seriousness of the offense.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a <u>de novo</u> review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. <u>See</u> Tenn. Code Ann. §§ 40-35-102, -103, -210; <u>State v. Brewer</u>, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); <u>State v. Thomas</u>, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. <u>See</u> <u>State v. Pike</u>, 978 S.W.2d 904, 926-27 (Tenn. 1998); <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); <u>State v. Lane</u>, 3 S.W.3d 456, 462 (Tenn. 1999). Guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing can be found in Tennessee Code Annotated section 40-35-103(1), which sets forth the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

<u>See</u> <u>State v. Hooper</u>, 29 S.W.3d 1, 5 (Tenn. 2000); <u>State v. Ashby</u>, 823 S.W.2d 166, 170 (Tenn. 1991).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. <u>See</u> Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. <u>See</u> <u>id.</u> § 40-35-103(5).

Because the Defendant is a standard offender convicted of a Class C felony and a Class E felony, he was entitled to a presumption that he was a favorable candidate for alternative sentencing in the absence of evidence to the contrary. <u>See</u> Tenn. Code Ann. § 40-35-102(6); <u>Lane</u>, 3 S.W.3d at 462. As we have already stated, the trial judge found that the presumption had been rebutted by

the degree to which the Defendant was involved in child pornography. For over a year the Defendant had struggled with his desire to view child pornography, and he was one of Tennessee's twenty-five most frequent visitors of child pornography websites, according to the Landslide records. Also, the trial court found that confinement of the Defendant was necessary to avoid depreciating the seriousness of the offenses for which he had been convicted.

It is clear from the record that the Defendant did exhibit a problem with child pornography. Although we do not wish to minimize the seriousness of supporting and contributing to the evil of child pornography, we conclude that the evidence preponderates against the trial court's finding that the State had rebutted the presumption that the Defendant is a favorable candidate for alternative sentencing. The presumption in the Defendant's favor is strengthened by the mitigating factors outlined by the trial court at the close of the sentencing hearing. The record shows that the Defendant has made a substantial effort toward rehabilitating himself by attending church and voluntarily seeking counseling with Dr. Buckner. Immediately after his bond hearing, he had his internet service terminated and has not been on the internet since his arrest. He has maintained employment throughout and has earned two promotions at his current job. The record is void of any evidence of a prior criminal record or any indication of other criminal activity such as drug use. Finally, the Defendant's pastor and Dr. Buckner testified that they are encouraged by the Defendant's progress, and Dr. Buckner wrote in his letter to the Board of Probation that, in his opinion, the Defendant poses no risk of sexual assaults or harm to minors and the likelihood of recidivism in the Defendant's case is minimal.

In State v. Dennis Harry Johnson, No. M2000-03047-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 820, at *1 (Nashville, October 12, 2001), the defendant was charged with two counts of sexual exploitation of a minor. The charges were based on the defendant's possession of videotapes, photographs, and computer discs containing images of nude minors, some of whom were engaged in sexual acts.[2] In that case, this Court affirmed the trial court's ruling that the presumption in favor of alternative sentencing had been overcome. The trial court based its ruling on the extreme youth of the victims, the defendant's involvement in an organization dedicated to the dissemination of child pornography, and the defendant's lack of remorse and lack of candor, which suggested a lack of potential for rehabilitation. Id. at *9.

The instant case is readily distinguishable. The record reflects that the Defendant has not been involved in the manufacture of child pornography in any way. Several witnesses testified at the sentencing hearing regarding the Defendant's remorse and repentance for his actions and his efforts to overcome his problem. The officer who testified at the hearing stated that the Defendant had been completely honest and cooperative with respect to their investigation of his illegal activities. Dr. Buckner testified that the Defendant's chances for successful rehabilitation are very high.

---

[2]The videotapes depicted the defendant and a young boy placing doll clothing on their erect penises and manipulating their penises to background music.

We agree with the Defendant that the State did not present sufficient evidence to rebut the statutory presumption that the Defendant is a favorable candidate for alternative sentencing. Given all the circumstances presented in this case, we conclude that an alternative sentence is appropriate in relation to the severity of the offenses and would be the least severe measure necessary to deter the Defendant's future criminal conduct, to protect society, and to deter others who are similarly situated and may be likely to commit similar offenses.

Therefore, we reverse the trial court's order that the Defendant serve his sentences in total confinement and remand to the trial court for consideration and imposition of some form of sentencing alternative other than confinement in the Department of Correction.

_____
DAVID H. WELLES, JUDGE